All right, our next case on the docket is People v. Taylor, 5-24-0308. Appellant, you may proceed if you're ready. Please identify yourself for the record. Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is Assistant Appellant Defender Chris Seeloff, and I represent the Defendant Appellant, Mr. Brian Taylor. Your Honors, for the past 25 years, Mr. Taylor has arguably not received the level of assistance that he is legally required to receive. In the trial court, Brookings failed to object to the foundation of the only evidence connecting Mr. Taylor to the crime. And on direct appeal, counsel failed to properly allege either ineffective assistance or plain error, and so waived any argument regarding the foundation. Finally, at the evidentiary hearing that is the subject of this appeal, Thiem failed to pursue the one issue that this Court twice said was the only one relevant to Mr. Taylor's case, and instead pursued the issue that this Court said was based on a mistaken belief of the evidence. The cause of the problem is obvious, Thiem's failure to investigate and argue the foundation issue, and the solution is straightforward, remand for a new evidentiary hearing with new counsel. And we ask that this Court grant that relief here today. I'd like to begin by pointing out the flaw in the State's argument that there was no prejudice because Brookings wasn't actually ineffective at trial. However, that's not the question raised by this appeal. As the State notes, and as we argued in our opening brief, the issue raised by Mr. Taylor is whether post-conviction counsel Thiem was actually unreasonable at the evidentiary hearing, and not whether Mr. Taylor deserves a new trial, but whether Thiem did enough or, in fact, anything that would have allowed the Circuit Court to determine whether he needed a new trial. And it is also clear from the record that Thiem's actions, and more importantly, her inactions, directly led to the Circuit Court denying Mr. Taylor's post-conviction petition after the evidentiary hearing, and so that denial was not a foregone conclusion, and thus remand is necessary for a new evidentiary hearing with new counsel. Thiem's first and perhaps most profound failure was the requesting judicial notice of an adverse DNA analysis from Dr. Green that simply does not appear anywhere in the record. And this failure was critical because it is what the Circuit Court based its entire decision on in denying Mr. Taylor his post-conviction relief, and the State now argues, uses it to argue, that there was no foundation error and no foundation objection would have been granted, and thus this whole petition should be, should, was properly dismissed. But there are two important things to remember about this report. First, any adverse report from Dr. Green that was sent to Brooking at trial would not have prevented Brooking from objecting to the State's lack of foundation for its DNA evidence in this case. And second, and perhaps more importantly, the report doesn't exist. The report, the record says the report doesn't exist twice. The State can't point to any report in the record, and it was never put forward. Nobody's ever actually mentioned anything about an adverse report existing until we get to this evidentiary hearing and this appeal, and now all of a sudden there's this mythical adverse report. So as to that first point about the Brooking not being prevented from arguing foundation, the State, like any litigant in any case, has the burden to lay adequate foundation for all of its evidence. Nothing about any adverse report that Brooking did or, as the record shows, did not receive, would have prevented him from objecting to the State's lack of foundation evidence. This court, in its 2000, in Mr. Taylor's initial direct appeal, as well as its 2021 order remanding for the evidentiary hearing that is the subject of this appeal, had found that both Olson and Reese failed to provide any foundation for their evidence. More specifically, they failed to discuss how the computer program they used was updated and whether it was updated at all and how it was, if it was. They both admitted that the results that they came to could have been come, anybody running that same test could have come to different results. There was this lack of foundation already there, and so all Brooking had to do was object to it. The State is also incorrect to argue that any adverse report conformed with this court's decision in the Salem County case that was going on at the same time as the trial that is the subject of this case. The State claims, citing to the circuit court's written order, that this was based off the same DNA analysis and the same procedure, but that's simply not true. A different blood draw was used from the Salem County case as from the Williamson County case. In fact, the State said it specifically wanted a new blood draw so that it could get new analysis specifically for this case with Mr. Taylor's blood draw. And the trial court granted a motion to eliminate, expressly prohibiting any discussion of the Salem County case in this case. The court said, I don't want it within a country mile of this case. It's too prejudicial. I don't want them thinking once criminal, always criminal. He's charged somewhere else with a similar crime, so he's guilty here. Salem County had nothing to do with this case. The State's failure to lay a proper foundation isn't speculative or hopeful. It's based on the evidence at trial, as I mentioned earlier, about Olson and Reese and this court finding as much that they failed to lay or at least testify as to proper foundation. That's because the State didn't ask them appropriate questions to go over what that foundation was. And then turning to the second point, the report just doesn't exist. As we pointed out in our brief, our opening brief and our reply brief, and as the State tacitly admits in its response brief, Brookings at trial, when the court said, okay, I'm looking at this March 5, 2001 report from Dr. Who is it? Dr. Breen, Your Honor. Okay. And is that the last thing that Dr. Breen on this case? And Brookings clears the record and says, yes, sir. That's it. It was the one and only report. So I don't know how the circuit court, whether it was from Thiem bringing it up, probably because she just asked for judicial notice after the State said, hey, what about this adverse report? Or the circuit court getting it in its head and not going back to the court. Somehow this second magical adverse report pops up. It doesn't exist. At the very least, if it does exist, I've never seen any proof of it. The State hasn't pointed any proof of it. And it doesn't matter, but to the extent that it does matter, it also doesn't exist. This also leads directly into the prejudice point and why Thiem asking the court to take judicial notice of this adverse report that isn't important and also doesn't exist is so prejudicial because the circuit court directly relied on this in denying Mr. Taylor's post-conviction petition. The circuit court argued that this adverse report existed, and so, you know, Brookings knew that his guy was dead to rights in the DNA. So he's not going to try and argue foundation. He's going to try and argue, oh, a discovery violation. But that doesn't really square on its own logic, and I don't understand, honestly, how the circuit court gets to that point. But more importantly, what it did was it allowed the circuit court to do that by saying, Your Honor, it's interesting. It comes up during the evidentiary hearing where the State asked Brookings, did you ever get any second adverse report from Dr. Breen? And then there's an objection, right? You know, that's what we were expecting to do is object at that point. We don't know anything about the report. We didn't get anything in discovery. And it goes back and forth, back and forth about whether it's relevant and what an adverse report would have done, gave us a trial strategy and everything. And so it would appear that Feen at that point said, You know what? I'm kind of done arguing this issue. Let's just say, Sure. Take judicial notice that this report exists. And he got all the testing. He got it back, and just it is what it is. But we don't know exactly what it says. And so the circuit court said, Okay, yeah, great. And then so then in writing its order, of course, it says, Well, there's this adverse report that said the DNA matches. And your client did it. So, yeah, of course he's going to, you know, try and say that, Oh, he didn't give us enough information to, you know, it's a discovery violation, so he has to go back on this technical issue because I can't argue actual innocence. And that's simply not true here. It's also worth noting that Feen failed to ever cross-examine Irvin when she was testifying, the prosecutor who tried Mr. Taylor originally. Irvin testified, let's say, on redirected examination and said, You could have, you know, fixed any evidentiary issues. I said, Yeah, foundation, anything will come up. I just fixed it. And then there were no questions after that from Feen. So she's pursuing this discovery violation that this court said was wrong. She's asking the court to take judicial notice of a report that doesn't exist, that's lethal to her case, and wound up losing it for her client. And she's blowing off chances to question anybody, the main prosecutor, about the foundation that the prosecutor failed to lay, that this court twice said, Hey, this is about the foundation issue. She's so locked in on this discovery violation and trying to vindicate Brookings' strategy and make it about the state screwing up that she forgot that this court has twice said Brookings was the one who screwed up. She was there. It was her job in representing Mr. Taylor to point out exactly how Brookings screwed up, but instead she tried to lay it all on the state and in so doing effectively threw Mr. Taylor under the bus to try and make that argument. So it's our argument that those are the reasons why she was unreasonable and to the extent that prejudice has to be proved, I think it's pretty clear that failing to do the one thing, pursue the one argument this court has twice told you is responsible to doing, along with asking the court to take judicial notice of facts that will guarantee your client loses the case, that has to be prejudicial. And so we would ask this court to remand for new counsel. Thank you, counsel. Thank you. I believe you may proceed and please identify yourself for the record. May it please the court, counsel. My name is Max Miller and I represent the people of the state of Illinois. At a third stage post-conviction proceeding, the defendant has the burden of proving a substantial constitutional violation. Now at a third stage hearing, the trial court acts as the fact finder, making credibility determinations and weighing the evidence. Courts have held that when Rule 651C compliance is no longer at issue, a general reasonableness standard otherwise applies and the unreasonable performance by a post-conviction counsel must prejudice the defendant. So in order to prevail on this claim, defendant must demonstrate that counsel's performance was deficient, but also that that deficiency caused prejudice. And a court may dispose of such a claim, an ineffective claim, on a lack of prejudice. Therefore, if defendant's claim would have failed, regardless of post-conviction counsel's actions, this court need not consider the failure of counsel's decisions. Again, in defendant's prior appeal, this court considered whether defendant made a substantial showing of a constitutional violation within his claim of ineffective assistance of appellate counsel for failing to raise the lack of foundation for the DNA evidence or expert testimony claim as an ineffective assistance of trial counsel claim. But in order to avoid the operation of waiver, underneath all of these layers of these ineffective assistance of counsel's claim, the State's essentially saying today, let's get to the merits of whether or not trial counsel was ineffective. That's why this Court sent this back for an evidentiary hearing at the third stage. Now, this Court held that the record on appeal demonstrated that trial counsel received some additional discovery that wasn't provided to defendant's DNA expert. And so this Court, in the second stage, said it couldn't speculate whether the additional discovery may have altered the defendant's DNA expert's findings or changed trial counsel's strategy, since fact-finding and credibility determinations must be made at the evidentiary stage. Now, after hearing testimony and being presented with the records of this case, the trial court found that this Court's prior holding that defendant's trial counsel received additional discovery not provided to defendant's DNA expert related to a time period following the report of Dr. Breen, dated March 5, 2001. So when defendant talks about this mythical report, we will talk about what the evidence of this report is. While this Court did not speculate, this Court did not, in defendant's prior appeal, regarding this additional discovery, that's because we were at the second stage. But the trial court has the benefit of the evidentiary hearing to look at this. And the trial court based its finding on numerous continuances in order to obtain samples of the State's extracted DNA for further testing as per Dr. Breen's opinion. Specifically, March 19, 2001, defense counsel made an oral motion for a continuance for DNA issues per the trial court's docket. On March 27, 2001, he filed a motion to produce, pursuant to Supreme Court Rule 412, requesting procedures, analyses of these reports. There's other instances of this related in the brief. Most pointedly, on June 4, 2001, so June now, and the parties were before the trial court and Broeking tells the trial court that Dr. Breen was doing an analysis on the State's first testing and that Broeking would provide the State with defendant's expert lab address. And although the results of this testing were not supplied to the State nor placed into evidence during the pendency of the case, only once Broeking had the results in hand, did defendant announce that he's all of a sudden ready for trial. Now, defendant's argument that he was prejudiced, basically two distinct claims. Post-conviction counsel failed to argue this alleged lack of foundation, denying him effective assistance of counsel, and that post-conviction counsel's strategy of requesting the trial court take judicial notice of the correspondence was improper. But the substantive issue, and only relevant question before this Court, considering whether defendant was prejudiced, is whether, in point of fact, trial counsel actually was ineffective. All of these subsequent claims, layering the degrees of ineffective assistance of counsel, will necessarily fail if he was not. Now, regarding this first claim, the issue on the alleged lack of foundation, this Court only previously held that defendant demonstrated prejudice for the purpose of a second-stage post-conviction analysis. That holding does nothing to undermine the finding of the trial court after a third-stage hearing. Those two aren't in conflict with each other. This Court noted that because the DNA evidence was the only direct evidence leaking defendant to the criminal defenses, there was a reasonable probability, if the DNA foundation was properly challenged, there may have been a basis to exclude the evidence, potentially raise reasonable doubts to defendant's guilt, and defendant's allegations regarding trial counsel's failure to do so was not affirmatively refuted by the record. So at the second stage, of course, that goes back. But crucially, this Court made no findings concerning trial counsel's strategy or performance at trial. The trial court noted that thorough consideration had been given to the testimony and evidence regarding the basis for Broeking's decision not to object to the lack of foundation for the State's DNA results. And the trial court found that the testimony we have from the prosecutor and defense counsel who they were able to get to testify at this hearing adequately explained counsel's strategy. Irvin, who was the prosecutor, could have cured any defect and properly presented the foundational elements for the admission of the evidence. That's a fact that was determined by the trial court. However, counsel elected not to object so that the inconsistencies in this report would be revealed to the jury, shedding doubt as to their accuracy. This strategy was mentioned at the second stage as well, but now this Court has the trial court giving its seal of approval on this. Now, the testimony of both attorneys substantiated that in the customs of their practice at the time they'd both done hundreds of cases together, that there was nothing unusual about that. And the actual efficacy of the State's identification evidence was augmented during this hearing because the trial court found that Broeking's trial strategy followed the recommendations of Dr. Breen and an independent analysis from Selmark. Defense counsel delayed trial in Williamson County until his conviction in Saline County was affirmed. The trial court found that this Court's decision in Saline County, affirmed defendant's conviction based off the same DNA analysis and procedure, discounts any reasonable probability that the result would have been any different. The trial court found that the specific work performed by the forensic scientists that are at issue anyway go to weight, not admissibility of the evidence. Therefore, defendant can't demonstrate prejudice regarding post-conviction counsel's position, assistance rather, where the trial court rightly concluded that no mistake in fact existed on the part of trial counsel. And that's what this Court held in its last opinion. They said we can't be sure that a mistake of fact either did not exist, but the trial court through this evidentiary hearing was able to close, to decide that there's not a mistake of fact here. This is what they wanted to do. Now, defendant next argues post-conviction counsel's strategy of requesting that the trial court take judicial notice of the subsequent correspondence. And he characterizes this as asking the trial court to take judicial notice of a fact that this court found was untrue. But this doesn't adequately represent the exchange that occurred below or acknowledge the considerable distinction between a trial court's findings after an evidentiary hearing and this court's previous holding at a second stage. Specifically, defendant improperly elevates this court's language regarding subsequent correspondence of trial counsel in its prior decision as precluding evidence on the matter entirely. But that's counterintuitive. Why would this court direct this back for an evidentiary hearing only to tie its hands in what it could hear if facts are relevant to this case and explain trial strategy, which is what the heart of this is? Now, a trial judge's factual findings and credibility determinations should only be disturbed if they are manifestly erroneous, so they have to be clearly, this error has to be clearly evident, plain, and indisputable. And defendant doesn't really directly refute the trial court's findings or even raise a direct challenge to them. Instead, he cites to this apparent tension between this court's prior holding and the findings after the evidentiary hearing. However, no actual conflict exists between these things because defendant cannot rely on this court's holding after a second stage, which is a legal presumption in order to nullify subsequent findings that the trial court made after an evidentiary hearing. Instead of challenging the findings, defendant presents this as a discrepancy, as a criticism of post-conviction counsel, and, you know, it's his opinion that defendant would have been better served if they hadn't called any attention to this relevant facts of subsequent correspondence, which was established through the introduction of these transcripts. The trial court's factual determinations in their totality preclude the possibility of prejudice. And it's not even really clear what defendant believes post-conviction counsel introduced by this asking for judicial notice that wasn't introduced already when these transcripts were read and the court was able to make these inferences. The analysis at the second and third stage are different, and this court considered only the post-conviction pleadings taken as true, but the findings now should be taken with greater weight after the evidentiary hearing. And if there are no questions, we just respectfully request that this court adjourn. Thank you, counsel. Thank you. Your Honor, I'll try and keep it brief here. It didn't really hit me until sort of the last minute or two of the State's time there, but in listening and keeping an ear out for exactly how they were phrasing things, I believe that they pretty much just exactly read their response brief to you in more or less that fashion. It's a little jumped up for oral argument, but at the end of the day, I believe that all the evidence and arguments they raised were essentially everything in their response brief, specifically not mentioning anything we brought up in our reply brief, which rebutted essentially every argument they made. I'll go through a few of the key ones that stood out to me here, but I think at the end of the day when your Honors are going back through this case and reviewing exactly how to make your decision or write up that decision, I would say just compare their response brief to our reply, but to sort of put a hat on a couple of things. The State is desperately, desperately trying to make this about the ultimate merits of the case. Why? Because that's a much more favorable standard of review for them. If it's about the ultimate merits of the petition and whether Mr. Taylor had ultimately made out a substantial constitutional violation, then we have to get into manifest error. But if, as we raise the issue and as we keep arguing, this is about Finn's reasonable assistance or the lack thereof, then it's a de novo review, and that allows your Honors to rely on any evidence in the record, any reason that is supported by the law in rendering your decision. I believe that they actually phrased it as somewhat more or less admitting that they want to leapfrog reasonableness and just get straight to the ultimate merits, which I guess if they just want to ignore our argument entirely, I would ask your Honors to take that into consideration. They also argue that the Circuit Court got this big difference between your Honors were reviewing the case at second stage, but you ran it for a third stage evidentiate hearing. And so they believe in the response brief, and again here today they accused me, or Mr. Taylor I should say, of trying to elevate second stage legal presumption finding over the factual findings of a Circuit Court at evidentiary hearing. But it's in fact the State who is trying to take the Circuit Court's written order, the findings that it made, which are in direct contravention of the record, and elevate it above this Court's findings, looking at that same record. I would also like to point out that in our reply brief we supplemented with appendices, or we put in the appendix the briefing from this previous appeal that came up, where Mr. Taylor argued and the State did not contest that there was no adverse report, no second report. The only time Dr. Breen sent anything to Brookings was that first report. So this isn't trying to wish cast a fact into existence. That report just doesn't exist. The State can't point to it. They try to point out to all this following correspondence that happened. But again, they can't actually point to the report. They can point to Brookings in the record asking for all these continuances, but it's also very important to note that those continuances for more time for Dr. Breen stop after a certain point. And then it's all about the Saline County case and the Saline County appeal, waiting to delay trial until then. So after a certain point, Brookings stopped trying to get continuances for anything about Dr. Breen and was much more worried about the Saline County report. But again, he never says it's because I got any report from Dr. Breen. And many of the continuances say, actually, I need more time because the State hasn't sent anything out for us to get tested by this independent tester. So this idea that your honors wouldn't tie your hands by preventing facts from being found below, you would if they're not true, if they don't appear in the record. So all this stuff about the adverse report, I would say just ignore it. The State's trying desperately to pull in anything about this guy was guilty anyways. That's not the question in this appeal. The question is your honors have twice found that the issue is foundation. Mr. Taylor needed somebody in the courtroom that day at the evidentiary to pursue the State about, what did you do about foundation? The State says, well, Irvin said, yeah, I'd have laid foundation if there was an objection made. Field didn't question that. She didn't say how. What foundation would you have laid? What was missing? Why didn't you properly lay foundation in the first place? Instead, let it go by and then admit it to a fact that not only does not exist, but your honors have properly found it does not exist, which then allowed the circuit court to say this fact exists and it's lethal to the case. Every time something could have come up that the Dean could have done right, she did it wrong. That's why it got remanded last time. That's why it needs to be remanded again. Thank you, counsel. We will take this matter under advisement and issue a ruling in due course. Thank you.